UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOANNA CHIARINO and the ESTATE OF ADOLF
CHIARINO by JOANNA CHIARINO,

                                  Plaintiff,           3:02-CV-0851

    v.

FIRST UNUM LIFE INSURANCE COMPANY,

                                  Defendant.
_____

**APPEARANCES:**                                     **OF COUNSEL:**

VITANZA SHABUS & FERTIG, L.L.P.           Thomas A. Vitanza, Esq.
*Counsel for Plaintiff*
15 Maple Street
Norwich, New York 13815

BOND SCHOENECK & KING, P.L.L.C.        Thomas E. Myers, Esq.
*Counsel for Defendant*
One Lincoln Center
Syracuse, New York 13202

NORMAN A. MORDUE, District Judge

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

      Plaintiff Joanna Chiarino is the widow of Adolph Chiarino, who died in December 2000, after being hospitalized as a result of an automobile accident. At issue in the present motion is defendant's decision denying plaintiff's claim for accidental death benefits payable under her husband's insurance policy with defendant which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*. Plaintiff claims that denial of her claim for accidental death benefits under Mr. Chiarino's policy was an abuse of discretion. Defendant denies this assertion and contends plaintiff has not met her substantial burden of

demonstrating arbitrary or capricious action on the part of the plan administrator.

## II.   FACTUAL BACKGROUND

The facts of this case are not materially in dispute.  Adolph Chiarino purchased a group life insurance policy from defendant which included coverage for accidental death or dismemberment.  The policy provides for accidental death and dismemberment benefits, in pertinent part, if the death occurs within 365 days from the date of the accident; or the accidental bodily injury results in death or dismemberment within 365 days from the date of the accident.  The policy defines "accidental bodily injury" as "a bodily injury that is the direct result of an accident and not contributed to by any other cause."  The policy also excludes from coverage any accidental losses caused by, contributed to by, or resulting from "a disease of the body, mental infirmity or diagnostic, medical or surgical treatment."  Importantly, the policy also specifically provides that when making a benefit determination under the policy, defendant has the "discretionary authority to determine . . . eligibility for benefits and to interpret the terms and provisions of the policy."

Plaintiff and her husband were involved in an automobile accident on November 24, 2000, which resulted in a number of injuries to Mr. Chiarino including fractures of three right ribs, a probable right pulmonary contusion, right hemothorax and fractures of the right tibia and fibula.  Prior to the accident, Mr. Chiarino had a 19 year history of diabetes with chronic renal failure due to diabetic nephropathy, hypertension and congestive heart failure.  During his nearly three week stay at a hospital following the accident, Mr. Chiarino's renal failure worsened, requiring dialysis.  He then developed repiratory failure and sepsis with a toxic metabolic encephalopathy and died on December 14, 2000.  Mr. Chiarino's death certificate listed the cause

of death as:

> PART 1(A) Immediate cause [of death]: staphylococcal sepsis, due to or as a consequence of(B): end stage renal disease, due to or as a consequence of(C): diabetes mellitus.
>
> Other Significant conditions contributing to death but not related to cause of death in Part 1(A): Motor Vehicle accident, tibia fracture, hemothorax.
>
> Manner of Death: Natural.

After Mr. Chiarino's death, plaintiff submitted a claim for life insurance as well as accidental death benefits under her husband's policy. On April 11, 2001, defendant's in-house physician expert conducted a review of Mr. Chiarino's medical records and concluded:

> Mr. Chiarino, who had a 19 year history of diabetes with chronic renal failure due to diabetic nephropathy, hypertension and congestive heart failure, sustained fractures of 3 right ribs, probable right pulmonary contusion, right hemothorax and fractures of the right tibia and fibula, following which his renal failure worsened and he required dialysis, then developed respiratory failure and sepsis with a toxic metabolic encephalopathy and died nearly 3 weeks later.
>
> Based on the available records, Mr. Chiarino's injuries were treated and resolving, but his underlying chronic renal failure due to diabetes, a disease of the body, substantially contributed to his prolonged hospital course and death. There is no indication that medical or surgical treatment contributed t

Based thereupon, defendant paid plaintiff $225,000 in life insurance benefits, but determined that additional accidental death benefits were not payable under the policy. Defendant wrote to plaintiff on May 1, 2001, and advised her of the denial of her claim for accidental death benefits as follows:

> Our medical consultant reviewed medical records from United Health Services Hospital dated November 24, 200 through December 14, 2000. It was determined that your husband's injuries that resulted from the motor vehicle accident on November 24, 2000 were treated and resolved, but his underlying chronic renal failure due to diabetes, a disease of the body, substantially contributed to his prolonged hospital course and death. in addition, the death certificate

3

indicates the immediate cause of death as "Staphylococcal Sepsis (due to) End Stage Renal Disease (due to) Diabetes Mellitus." The manner of death was determined to be natural. Because your husband's death was not the result of bodily injury caused solely by accidental means, but was contributed to be disease of the body, benefits for his claim are not payable.

After defendant denied the claim for accidental death benefits, plaintiff contacted Dr. David G. Martinez who signed her husband's death certificate. Dr. Martinez thereafter sent plaintiff's counsel a letter stating:

> Mrs. Chiarino called me concerning her husband, Adolph, DOB 6/22/1937. She is concerned about the cause of her husband's death as listed on his death certificate.
>
> While I believe the attribution of his death to end stage renal disease as a result of his diabetes is correct, I need to clarify this for you. Mr. Chiarino's prognosis would have been good had he been started on hemodialysis in an outpatient setting. Unfortunately. he had an accident and was hospitalized. The complications from this accident were unable to be stabilized due to his end stage renal disease, diabetes, etc. and he ultimately expired. However, if he had not had this accident, he probably would have lived several more years on maintenance hemodialysis.
>
> Therefore, while I believe the death summary to be accurate, I believe the accident certainly resulted in a premature death for Mr. Chiarino.

Based upon this letter, plaintiff's claim for accidental death benefits was re-examined and the determination to deny benefits was reaffirmed by letter dated February 22, 2002:

> Based on the documentation provided. our position remains that Mr. Chiarino did not sustain a covered loss that resulted from an "accidental bodily injury" as defined by the Policy.
>
> The loss of Mr. Chiarino's life did not result from a bodily injury that was the direct result of an accident and not contributed to by any other cause. Instead, Mr. Chiarino's underlying chronic renal failure due to diabetes, a disease of the body, substantially contributing to his prolonged hospital course and his death.
>
> In addition, the Policy does not cover any accidental losses caused by, contributed to by, or resulting from a disease of the body, as was

shown to be the case with Mr. Chiarino.

Plaintiff then commenced the instant suit in State Supreme Court for Chenango which defendant removed the action to this Court in July 2002. Defendant now moves for judgment on the administrative record herein and seeks dismissal of the complaint.

### III.    DISCUSSION

### A.    Standard of Review

In considering the applicable standard of review, the Court notes that the benefit plan at issue herein gives the claims administrator full discretionary authority to determine eligibility for benefits under the plan, to construe the terms of the plan, and to make determinations regarding claims for plan benefits. It is well established that where, as here, "the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, [a court] will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.' " *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995). Under the "highly deferential" arbitrary and capricious standard, the question before the court is "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995). Thus, on a motion for judgment in favor of the administrator, the issue is not whether an administrator was presented with conflicting evidence; but rather, whether as a matter of law the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan* at 442.

### B.    Denial of Plaintiff's Claim

In the instant case, the plan administrator denied plaintiff's claim for accidental death

benefits after a thorough review of the medical evidence in the case which revealed that her husband's death was caused or contributed to in major part by his underlying chronic illness of diabetes and renal failure.  Based upon the clearly defined eligibility requirements in the subject plan, defendant made a determination that plaintiff was not entitled to collect accidental death benefits.  Such benefits are only payable for death resulting from an "accidental bodily injury" which is defined as "a bodily injury that is the direct result of an accident and not contributed to by any other cause."  Since the medical evidence in this case, including the death certificate signed by Mr. Chiarino's own doctor, indicated that his death was caused by or at least contributed to by his underlying pre-existing illnesses, defendant determined that injuries sustained in the automobile accident was not the cause of Mr. Chiarino's death.  This is not an unreasonable or clearly erroneous construction of the plan provisions in issue.  "The court may not upset a reasonable interpretation by the administrator." *Jordan*, 46 F.3d at 1271.  This is particularly true in the present case wherein plaintiff does not dispute the relevant underlying facts, but only interpretation of those facts by the plan administrator.

In support of her contention that defendant's denial of benefits was arbitrary and capricious, plaintiff simply points to the letter written by her husband's doctor in September 2001, in connection with the wording of the death certificate.  Therein, Dr. Martinez, explains that while the death summary which appears on the certificate was accurate, it may not have adequately conveyed his belief that Mr. Chiarino's inevitable death from chronic illness was hastened by the automobile accident.  However, defendant already reconsidered plaintiff's claim in light of Dr. Martinez's clarification and concluded nevertheless that it was not obligated to pay accidental death benefits for a death "caused by, contributed to, or resulting from . . . disease of

6

the body." Thus, even assuming that plaintiff's construction of the subject plan's provisions is reasonable, the standard of review compels the Court to defer to the plan administrator's construction. *See Pagan*, 52 F.3d at 443.

The plan administrator found that the medical evidence in this case as well as the additional statement by Dr. Martinez did not trigger accidental death coverage under its policy. This finding is amply supported by the record herein and does not reflect a clear error of judgment. Contrary to plaintiff's arguments, the record does not establish that the plan administrator's decision to deny benefits was "without reason, unsupported by substantial evidence or erroneous as a matter of law."

As a further matter, there is no evidence to support plaintiff's claim that defendant's role as both insurer and administrator of the benefit plan is a conflict of interest fatal to defendant's motion for judgment. Plaintiff cites no authority for her argument that defendant having an in-house physician review Mr. Chiarino's medical records was improper nor does she submit evidence demonstrating that the medical conclusion would have been any different had an outside review been conducted. Moreover, it is settled law in this Circuit that an insurer's dual role in evaluating and paying benefits claims is not enough, standing alone, to suggest a fatal conflict of interest. *See Pulvers v. First Unum Life Ins. Co.,* 210 F.3d 89, 92 (2d Cir. 2000). Applying the highly deferential arbitrary and capricious standard of review, the Court finds no basis to disturb the plan administrator's determination.

### III.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that defendant's motion for judgment on the administrative record is

GRANTED; and it is further

ORDERED that the action is dismissed in its entirety with prejudice.

IT IS SO ORDERED.

Dated: September 30, 2005
Syracuse, New York

Norman A. Mordue
U.S. District Judge